IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TALLI MCFADDEN,<br>    Plaintiff, | : <br> : <br> : |
| v. | :    CIVIL ACTION NO. 18-CV-1320 <br> : |
| CITY OF PHILADELPHIA, *et al.*,<br>    Defendants. | : <br> : |

**MEMORANDUM**

SÁNCHEZ, J.  MAY 23, 2018

Plaintiff Talli McFadden, who is currently incarcerated at the Federal Detention Center in Philadelphia while awaiting sentencing in Criminal Action No. 15-376,[1] has filed this civil action against the City of Philadelphia, Manuel Santiago, Frank Jastrzembski, Michael Duffey, Thomas Burke, Martin Devlin, Dennis Dusak, Charles Myers, Anthony Tomaino, James Morton, Eugene Wyatt, the United States of America, Attorney General Jeff Sessions, Christopher L. Boyer, Sandra Luehrs-Shaw, Joseph LaBar, "John Does 1 Through 25," the Commonwealth of Pennsylvania, Governor Tom Wolf, and "Jane Poes 1 Through 25." By Order entered on April 4, 2018, the Court denied McFadden's Motion for Leave to Proceed *In Forma Pauperis* because he had sufficient funds in his prisoner account to pay the $350.00 filing fee and $50.00 administrative fee, and directed McFadden to remit $400.00 to the Clerk of Court within thirty (30) days. (ECF No. 3.) After receiving an extension of time, McFadden submitted the full filing fee, which the Court received on May 21, 2018. For the reasons set forth below, the Court will dismiss McFadden's Complaint.

---

[1] The Honorable Gene E.K. Pratter is presiding over McFadden's criminal proceedings.

I. **FACTS AND PROCEDURAL HISTORY**

McFadden was arrested by officers of the Philadelphia Police Department on May 27, 1994, for "events that took place on April 19, 1994, when firearms were discharged by various persons in the direction of an automobile that was travelling in the Germantown section of Philadelphia; and one of the passengers in the vehicle, in the back seat, was struck by a bullet and tragically died." (Compl. at 13.)[2] According to McFadden, he "was charged with various violations of the Pennsylvania Crimes Code (1994), including murder, possession of a firearm, aggravated assault, simple assault, reckless endangerment, carrying a firearm in public, and conspiracy." (*Id.*)

McFadden contends that the prosecution's evidence was inadequate to connect him to "an intentional act of violence having an intended or natural consequence of death." (*Id.* at 15.) Despite that, he asserts that his attorney "negotiated a plea agreement that required [him] to plead guilty to 'voluntary manslaughter.'" (*Id.*) Public dockets reflect that on July 17, 1996, McFadden pled guilty to voluntary manslaughter and was sentenced to a minimum of 48 months and a maximum of 10 years of incarceration. *Commonwealth v. McFadden*, Docket No. CP-51-CR-0700241-1994 (Phila. Ct. Common Pleas). All other charges were *nolle prossed. Id.* McFadden now claims that "no document prepared . . . in the case . . . contains any reference to section 2503, or the applicable subsection of 2503, in the Crimes Code of 1994; and at no time were the elements of the statutory crime or common law crime read to [him] by the Common Pleas judge or the District Attorney."[3] (Compl. at 15.) He also contends that "Judge Glazer did not sentence [him] to the statutory crime of voluntary manslaughter, 18 P.S. sec. 2503, or any

---

[2] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

[3] Section 2503 of Title 18 of the Pennsylvania Crimes Code sets forth the elements necessary for a conviction for voluntary manslaughter.

2

subsection of that statute . . . at the time of sentencing . . .; and [he] was not sentenced to a category 1 felony, and he was not sentenced to a minimum term of five years." (*Id.* at 17.) McFadden also argues that his plea agreement form "was constitutionally deficient in that it did not specify the elements of the offense charged, and it did not contain any reference to either the 1994 or 1995 versions of any statutory crime." (*Id.*)

After sentencing, "the Pennsylvania State Police and its agents . . . began the task of entering into the NCIC Criminal History database the history of McFadden's proceedings in Philadelphia." (*Id.* at 18.) When they discovered that "McFadden had not been charged with a statutory [c]rime, and that his conviction, in fact, was constitutionally defective, those State Police and agents intentionally fabricated and added to the official records in order to hide the errors . . . to [ensure] that McFadden was illegally imprisoned in violation of law." (*Id.*) According to McFadden, the State Police "entered '2503' into the criminal history report without any court order or other required due process of law" and indicated that he had been sentenced to a minimum of five (5) years. (*Id.* at 19-20.) He also contends that they "compounded their fraudulent entries and their illegal conspiracy to harm plaintiff McFadden by disseminating their false information for over 24 years, to the other defendants." (*Id.* at 20.)

McFadden contends that he was "illegally damaged and falsely imprisoned by the Commonwealth and other Jane Poe defendants" when they used the false information to deny him parole after four (4) years and "forced him to serve five years in state correctional institutions before parole." (*Id.* at 21.) He also alleges that "[t]he United States and its agents, including the John Doe defendants, presented the false information to this Court [in Criminal Action No. 00-107] and caused the Court to sentence McFadden to an additional term of five years; and such sentence was illegal and unconstitutional." (*Id.*) McFadden further argues that

3

the false information has been included in a Presentence Investigation Report that was prepared by United States Probation Officer for Criminal Action No. 15-376 "in an attempt to falsely and corruptly influence this Honorable Court to enhance the sentence yet to be imposed on McFadden in that case." (*Id.* at 22.) He believes that Governor Wolf "has the authority . . . to command that the executive and law enforcement records of Pennsylvania be purged of the illegal and inaccurate information," and asserts that he has no remedy under state law or the habeas corpus statutes, 28 U.S.C. §§ 2241 & 2255, to "purge the conviction or sentence" because he is no longer in custody for his prior convictions. (*Id.* at 22-23.)

McFadden goes on to argue that he was "framed" by the Philadelphia Police Department Defendants because he "did not shoot" the victim of the voluntary manslaughter. (*Id.* at 24.) He contends that Officers Santiago and Jastrzembski used "false statements" to charge him, and that the "Philadelphia District Attorney endorsed the false statements." (*Id.* at 25.) McFadden asserts that Joseph LaBar, the Assistant District Attorney who prosecuted him, "withheld evidence, and suborned acts designed to prevent the disclosure of evidence that would have eroded any reason for McFadden to be held [and] subjected to possible trial." (*Id.* at 28.) He believes that "[f]or many years dating back to at least the 1970s, and continuing well beyond the time of the investigation of McFadden, the City of Philadelphia, had in force and effect a policy, practice, or custom of unconstitutional misconduct in homicide investigations, and in particular . . . withholding exculpatory evidence, and fabricating incriminating statements." (*Id.* at 34.)

With respect to his federal convictions, McFadden states that he was paroled from state custody in 1999 but was placed in a halfway house because he "had been falsely convicted of an offense involving violence." (*Id.* at 30.) While in the halfway house, he was targeted by law enforcement authorities, including parole authorities in conjunction with the Pennsylvania State

4

Police and the Drug Enforcement Administration. (*Id.* at 31.) In February of 2000, McFadden was taken into custody by federal authorities, and "[t]he United States and the John Doe defendants used the false conviction to deny [him] bail." (*Id.*) They also "corruptly abused and perverted process by using the false conviction, 'facts' allegedly contained in the Philadelphia charging documents, and the falsified records to enhance McFadden's federal sentence." (*Id.*) Public dockets reflect that in 2000, McFadden was convicted of conspiracy to possess cocaine with the intent to distribute, aiding and abetting an attempt to possess cocaine with the intent to distribute, and possession with intent to distribute more than five (5) grams of cocaine base, and was sentenced to 108 months of imprisonment. *United States v. McFadden*, Criminal Action No. 00-107 (E.D. Pa.).[4]

McFadden was "again targeted in October 2015 by the United States." (Compl. at 33.) He alleges that "[t]he United States again use[d] the false conviction of 1996, and the false information in state and federal records, to obstruct justice and falsely accuse McFadden in court documents of being a 'murder' [sic] and danger to society." (*Id.*) McFadden was again denied bail. (*Id.*) In 2016, the United States presented a superseding indictment, accusing McFadden of participating in "a multi-year conspiracy dating back to 2009 while he was incarcerated." (*Id.*) McFadden alleges that he has entered into a "negotiated plea" in this matter. (*Id.* at 55.)

McFadden claims that as a result of the Defendants' conduct, he was "improperly arrested and imprisoned, unfairly tried, wrongfully convicted, and forced to serve over 20 years in prison for a crime he did not commit." (Compl. at 45.) He "sustained economic injuries and damages, including loss of income and loss of career opportunities." (*Id.*) McFadden was also "deprived of his familial relationships." (*Id.*)

---

[4] McFadden's sentence was subsequently reduced to 55 months of imprisonment. *United States v. McFadden*, Criminal Action No. 00-107 (E.D. Pa.)

5

McFadden raises claims pursuant to 42 U.S.C. § 1983 for abuse of process in violation of the Fourth and Fourteenth Amendments, deprivation of liberty and denial of a fair trial, violation of his right against self-incrimination in violation of the Fifth and Fourteenth Amendments, civil rights conspiracy, failure to intervene, supervisory liability against Defendants Burke and Duffey, and municipal liability against the City of Philadelphia. (*Id.* at 46-54.) He also alleges violations of the Pennsylvania Constitution, "including the Declaration of Fundamental Rights." (*Id.* at 54.) McFadden also contends that the Defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and also alleges various tort claims under state law. (*Id.* at 57-59.) He claims that he is entitled to *coram nobis* and mandamus relief, as well as injunctive relief in the form of "enjoin[ing] the United States from using the false information and defective convictions to the detriment of plaintiff." (*Id.* at 55.) McFadden also requests that he be "discharge[d]" in Criminal Action No. 15-376, or that any sentence be adjusted "because of the prosecutorial misconduct that has infected the proceedings in Case 376." (*Id.* at 56.) He also seeks an order enjoining the Defendants "from employing any process or using in any way, any information which in whole or part is derived from or includes the [1996] conviction . . ., and further, to relieve [him] from any direct or indirect burden in any way traceable to the misconduct describe herein." (*Id.* at 59.) Finally, McFadden seeks $50 million in compensatory damages, punitive damages "of not less than 10 times the amount of compensatory damages," "[s]tatutory treble damages of not less than $100 million," and attorneys' fees. (*Id.*)

## II. STANDARD OF REVIEW

Although McFadden has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint

6

pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Probation & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court may also dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *see also McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010). Furthermore, the Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As

7

McFadden is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Pursuant to 42 U.S.C. § 1983

Underlying all of McFadden's § 1983 claims is his belief that his 1996 state voluntary manslaughter conviction and 2000 federal conviction for drug distribution are illegal. To the extent that McFadden seeks for these convictions and sentences to be vacated, he must pursue petitions for a writ of *habeas corpus* rather than a civil rights action.

Moreover, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)); *Royal v. Durison*, 254 F. App'x 163, 165-66 (3d Cir. 2007) (concluding that *Heck* barred plaintiff's § 1983 claim challenging defendants' failure to properly investigate his allegations that time served had been improperly calculated); *Hinkley v. Leigh Cty. Clerk of Courts*, No. 11-1164, 2012 WL 1057452, at *3 (E.D. Pa. Mar. 29, 2012) (concluding that plaintiff's claims challenging alleged errors in the computation of his

8

sentence were not yet cognizable under § 1983 because plaintiff's attempts at invalidating his sentences had not yet been successful).

The dockets for McFadden's prior convictions reflect that those convictions have not been reversed, expunged, or otherwise invalidated. Accordingly, any claims alleging unconstitutional conviction or imprisonment are not currently cognizable under § 1983. In other words, McFadden cannot raise claims challenging the constitutionality of any aspect of the legal proceedings leading to his convictions as well as the failure of the courts to vacate those convictions or correct any false information that McFadden believes exists with respect to those convictions. That is so regardless of whether *habeas* relief is still available to him. *See Williams v. Consovoy*, 453 F.3d 173, 179 (3d Cir. 2006). Therefore, the Court will dismiss McFadden's § 1983 claims without prejudice to him filing a new complaint only in the event that his convictions and sentences are ever vacated.

### B.     Request for *Coram Nobis* Relief

McFadden seeks *coram nobis* relief for both his 1996 state conviction and his 2000 federal conviction. With respect to his state conviction, however, *coram nobis* "is not available in a federal court as a means of attack on a state criminal judgment." *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (citations omitted). Moreover, "Federal Rule of Civil Procedure 60(b) abolished the writ of error *coram nobis* in civil cases." *United States v. Stoneman*, 870 F.2d 102, 105 n.6 (3d Cir. 1989). Accordingly, McFadden's claims requesting *coram nobis* relief will be dismissed.

### C.     Request for Mandamus Relief

As noted above, McFadden also requests mandamus relief. (Compl. at 59.) Under 28 U.S.C. § 1361, districts courts have jurisdiction over "any action in the nature of mandamus to

9

compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." To the extent McFadden seeks mandamus relief against the state officials named as Defendants, his claims fail because § 1361 does not afford a remedy against state actors. *See Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) (per curiam) ("The District Court properly concluded that such a remedy was not available because, to the extent they sought mandamus relief in their complaint, 28 U.S.C. § 1361 only affords a remedy against persons who are employees or officers of the United States and neither of the defendants fall in these categories."). To the extent that McFadden seeks mandamus relief against Attorney General Jeff Sessions and other Department of Justice officials, "mandamus relief does not lie to control the exercise of an Attorney General's discretion." *In re Banks*, 699 F. App'x 142, 143 (3d Cir. 2017); *see also Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965) (noting that the prosecutorial discretion of the Attorney General may not be controlled through mandamus). Thus, McFadden's mandamus claims will be dismissed.

### D. Request for Injunctive Relief Directed Toward Pending Criminal Case

McFadden also seeks injunctive relief in the form of an order "enjoin[ing] the United States from using the false information and defective convictions to the detriment of plaintiff" in Criminal Action No. 15-376. (Compl. at 55.) He claims that the Government "has relied on the false information from [his 1996 conviction] to recommend an enhancement that could cause [him] to be wrongfully sentenced for decades." (*Id.*) He argues that "[t]he Court should discharge plaintiff in Case 376, or adjust any sentence for the wrongfully obtained sentences previously served, because of the prosecutorial misconduct that has infected the proceedings in Case 376." (*Id.* at 56.) However, "[w]here an adequate remedy at law exists, equitable relief will not be granted." *Iacona v. United States*, 343 F. Supp. 600, 603 (E.D. Pa. 1972). The Third

10

Circuit has concluded that a person indicted for violating a federal criminal statute has an adequate remedy at law if the question can be raised in the criminal prosecution. *See, e.g., Majuri v. United States*, 431 F.2d 469, 473 (3d Cir. 1970). Here, Criminal Action No. 15-376 is still pending before Judge Pratter, and therefore McFadden has the opportunity to raise any objections regarding the use of his 1996 conviction to enhance any federal sentence in proceedings before her. Accordingly, any claims requesting that this Court enjoin McFadden's pending criminal proceedings will be denied.

### E.     RICO Claims

The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter[, which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). "[I]n construing the federal RICO law, [the Third] Circuit has rejected the argument that personal injuries qualify as RICO injuries to 'business or property.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 492 (3d Cir. 2000)). Furthermore, RICO does not provide a cause of action where the damages alleged are "speculative." *Maio v. Aetna, Inc.*, 221 F.3d 472, 495 (3d Cir. 2000) (speculative damages that were "predicated exclusively on the *possibility* that future events might occur" could not form the basis of a RICO injury).

Nothing in the Complaint provides a plausible basis for concluding that McFadden suffered a non-speculative injury to business or property that would give him standing to raise a RICO claim.[5] In particular, McFadden cannot state a RICO claim based on injuries he sustained

---

[5] The Court need not credit any conclusory allegations that McFadden may raise that he suffered harm to business or property absent factual support for those allegations.

11

by virtue of his imprisonment—including any lost employment opportunities—because those injuries are not injuries to "business or property" for purposes of RICO.[6] *See, e.g., Etti ben-Issaschar v. ELI Am. Friends of the Israel Ass'n for Child Prot., Inc.*, No. CV 15-6441, 2016 WL 97682, at *3 (E.D. Pa. Jan. 7, 2016) ("The type of harm suffered by [plaintiff] for which she seeks to recover in this action—i.e., harm related to her detention and the alleged abuse she suffered while detained—is not an injury to 'business or property' that is cognizable under the RICO laws."); *Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (observing that "[m]ental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff" and explaining that "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest"). Moreover, McFadden's failure to allege an injury to business or property is also fatal to his RICO conspiracy claims. *Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 229 (3d Cir. 2007) ("A plaintiff alleging a civil RICO violation under *either* § 1962(c) or (d) must plead a cognizable injury to 'business or property' under § 1964(c).").[7]

### F. State Law Claims

As noted above, McFadden raises various tort claims pursuant to state law. However, because the Court is dismissing all of McFadden's federal claims, the Court declines to exercise supplemental jurisdiction over McFadden's state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it]

---

[6] A lost opportunity to pursue a personal injury claim is also not "business or property" for purposes of RICO. *See Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 226 (3d Cir. 2007).

[7] To the extent that McFadden asserts violations of criminal statutes as part of his RICO claim, criminal statutes do not provide a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]").

12

has dismissed all claims over which it has original jurisdiction"); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (noting that "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). Here, there is no reason to retain jurisdiction over McFadden's state law claims. Thus, McFadden's state law claims will be dismissed without prejudice to his right to raise them in state court.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss McFadden's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1). McFadden's claims challenging his convictions and sentences, which are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) will be dismissed without prejudice to his right to pursue them in a new lawsuit if and when his convictions are invalidated. His claims requesting *coram nobis* relief will be dismissed without prejudice to his right to raise them in his respective criminal cases. McFadden's state law claims will be dismissed without prejudice to his right to raise them in state court. McFadden will not be permitted to file an amended complaint, as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

JUAN R. SÁNCHEZ, J.

---

[8] The Court takes no position with respect to the merits or timeliness of any state law claims that McFadden may raise.

13